Kabir v Formica (2025 NY Slip Op 50664(U))

[*1]

Kabir v Formica

2025 NY Slip Op 50664(U)

Decided on April 3, 2025

Supreme Court, Richmond County

Castorina, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 3, 2025
Supreme Court, Richmond County

Shahnaj Kabir, Plaintiff,

against
Robert Formica, RICHARD FORMICA, DUNKIN' BRANDS, INC., DUNKIN' DONUTS FRANCHISING LLC, BIG E DELI N FUEL CORP., QSR MANAGEMENT and WEST SERVICE RD., LLC, Defendant.

Index No. 152024/2021

Attorney for the Plaintiff
Mark Linder 
Harmon, Linder & Rogowsky 
3 Park Avenue Suite 2300
New York, NY 10016 
Phone: (212) 732-3665 
E-mail: Harmon.Linder.Rogowsky&commat;gmail.com
Attorney for Defendant Robert Formica
None Recorded
Attorney for Defendant Richard Formica
None Recorded
Attorney for Defendants Dunkin' Brands, Inc./ Dunkin' Donuts Franchising LLC
Marc D. Sloane 
Mintzer, Sarowitz, Zeris, Ledua & Meyers 
17 West John Street Suite 200
Hicksville, NY 11801 
Phone: (516) 939-9200 
E-mail: msloane&commat;defensecounsel.com Attorney for Defendant Big E Deli N Fuel Corp
David F Kluepfel 
Cascone & Kluepfel, LLP 
497 Main Street
Farmingdale, NY 11735 
Phone: (516) 747-1990 
E-mail: llucchese&commat;cklaw.com
Attorney for Defendant QSR Management
Stephanie Alicia Tebbett 
Nicoletti Spinner Ryan Gulino Pinter 
555 5th Ave Fl 8
New York, NY 10017-2416 
Phone: (212) 730-7750 
E-mail: stebbett&commat;nicolettilaw.com
Attorney for Defendant West Service Rd., LLC
Sandra Marie Bonnick 
Barry McTiernan & Moore 
One Battery Park Plaza 35th Floor
New York, NY 10004 
Phone: (212) 313-3600 
E-mail: sbonnick&commat;bmmfirm.com

Ronald Castorina, Jr., J.

The following e-filed documents listed on NYSCEF (Motion #005) numbered 163-166, 192-202, 221-228, 231, 235, 318; (Motion #006) numbered 168-191, 232, 247; (Motion #007) numbered 203-216, 233-234, 261, 320, 325; (Motion #008) numbered 236-246, 262, 285-287, 321; (Motion #009) numbered 249-260, 263, 274-284, 310-311, 322; (Motion #010) numbered 265-273, 312-317, 323-324; and (Motion #011) numbered 288-309, 326-329 were read on this motion.
Upon the foregoing documents, and after oral argument conducted on February 20, 2025, Motion Sequence No. 005, Motion Sequence No. 006, Motion Sequence No. 007, Motion Sequence No. 008, Motion Sequence No. 009, Motion Sequence No. 010 and Motion Sequence No. 011 are resolved and therefore, it is hereby,
ORDERED that Plaintiff's Motion Sequence No. 005 request for to strike Defendant Big E Deli N Fuel Corp.'s answer, pursuant to CPLR § 3126, for Defendant Big E Deli N Fuel [*2]Corp.'s failure to appear for their deposition is GRANTED, with prejudice; and it is further,
ORDERED, that Defendant West Service's Motion Sequence No. 006 request for summary judgment and dismissal of Plaintiff's complaint pursuant to CPLR § 3212, as to Defendant West Service Rd., LLC is GRANTED on consent; and it is further,
ORDERED, that Defendant Big E's Motion Sequence No. 007 seeking summary judgment pursuant to CPLR § 3212 as to liability and dismissing all claims and crossclaims against Defendant Big E is DENIED as moot.; and it is further,
ORDERED, that QSR Management's Motion Sequence No. 008 seeking summary judgment pursuant to CPLR § 3212 and dismissal of Plaintiff's Complaint, and all crossclaims asserted against Defendant QSR Management, because no questions of fact exist to provide Plaintiff any basis for relief as against Defendant QSR Management is DENIED; and it is further,
ORDERED, that Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC's Motion Sequence No. 009 request for summary judgment pursuant to CPLR § 3212 and dismissal of Plaintiff's Complaint as to Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC and all crossclaims filed against Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC is GRANTED with prejudice; and it is further,
ORDERED, that Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC's Motion Sequence No. 009 request for summary judgment pursuant to CPLR § 3212 on Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC crossclaims for contractual and common law indemnification against Defendant West Service Rd., LLC, is GRANTED; and it is further,
ORDERED, that Defendant Big E Deli N Fuel Corp.'s Motion Sequence No. 010 request pursuant to CPLR § 3042 [b] and CPLR § 3043 [b] seeking to strike and preclude Plaintiff's supplemental bill of particulars, dated November 14, 2024, is DENIED as moot; and it is further,
ORDERED, that Defendant West Service Road LLC's request pursuant to CPLR § 3042 [b] and CPLR § 3043 [b] to strike and preclude Plaintiff's Supplemental Bill of Particulars, dated November 14, 2024, is DENIED with prejudice; and it is further,
ORDERED, that counsel to appear for in-person status conference on next adjourn date, April 29, 2025, at 9:30 AM at the Courthouse located at 26 Central Avenue, Courtroom 330, Staten Island, NY; and it is further,
ORDERED, that the Clerk of the Court shall enter judgment accordingly.
The foregoing shall constitute the Decision and Order of this Court. Memorandum Decision
I. Procedural History
On or about October 27, 2021, Plaintiff commenced this negligence action to recover for personal injuries allegedly sustained by the Plaintiff in an accident that occurred on January 29, 2020. Plaintiff contends that she was traversing the stairs located at 180 West Service Road when she fell due to an allegedly defective and/or collapsing stairs; steps that are of irregular and/or improper riser height; improperly sized steps; excessively worn stairs and steps; stairs and steps covered with water, debris, foreign and/or slippery substances; absence of proper/adequate handrails; absence of non-slip tread applications on said stairs and steps; absence of proper/adequate illumination; excessively steep staircase; loose stair treads, cracked, broken, [*3]etc.; stair treads that were uneven and/or sloped; defective handrails; the application or use of improper cleaning products; and/or the application of improper maintenance products that left said stairs with a defective/dangerous surface. The location was owned and managed by Defendants Robert Formica, Richard Formica, Dunkin' Brands, Inc., Dunkin' Donuts Franchising LLC, Big E Deli N Fuel Corp., QSR Management and West Service Rd., LLC. Plaintiff further contends that because of the accident, she sustained severe and serious injuries.
Plaintiff filed a summons and complaint on or about October 27, 2021. (NY St Cts Filing [NYSCEF] Doc No. 290). On or about February 8, 2024, the parties entered a stipulation to Amend the Caption and Pleadings. (NY St Cts Filing [NYSCEF] Doc No. 291). This stipulation was never "So-Ordered" by the Court. (see id). The stipulation provided that plaintiff was to serve a Supplemental Summons and Amended Complaint on West Service pursuant to the CPLR. (see id). An Amended Summons and Complaint was e-filed on NYSCEF on February 14, 2024. (NY St Cts Filing [NYSCEF] Doc No. 292).
The caption was officially changed on June 5, 2024, with the filing of a Notice to County Clerk Amendment to Caption. (NY St Cts Filing [NYSCEF] Doc No. 294). On June 6, 2024, Verified Answer to the Amended Verified Complaint by West Service. An Amended Answer was filed by West Service on June 7, 2024, adding specific verbiage about Plaintiff's claim being barred by the Workers Compensation Law of New York. (NY St Cts Filing [NYSCEF] Doc No. 295). On September 24, 2024, the Court issued a Certification Order directing the Plaintiff to file a Note of Issue within 30 days and scheduling the matter for a settlement conference on November 12, 2024. (NY St Cts Filing [NYSCEF] Doc No. 305). Plaintiff filed a Note of Issue and Certificate of Readiness for Trail on September 24, 2024. (NY St Cts Filing [NYSCEF] Doc No. 306).
Plaintiff filed Motion Sequence No. 005 by Notice of Motion on October 8, 2024, seeking (a) to strike Defendant Big E Deli N Fuel Corp.'s (herein after referred to as Big E) answer, pursuant to CPLR § 3126, for failure to appear for their deposition; (b) to compel Defendants to respond to Plaintiff's discovery demand or strike defendants answer; (c) to compel Defendant West Service Road, LLC (hereinafter referred to as West Service) to produce its witnesses; (d) to vacate the note of issue; and (e) such other and further relief as the Court may deem just and proper. Defendant West Service filed opposition on October 29, 2024. Defendant Big E filed opposition on November 7, 2024. Plaintiff filed reply on November 21, 2024.
Defendant West Service filed Motion Sequence No. 006 by Notice of Motion on October 24, 2024, seeking (a) summary judgment and dismissal of Plaintiff's complaint pursuant to CPLR § 3212, as no questions of fact exist to provide Plaintiff another basis for relief as against West Service other than through Workers' Compensation benefits, which plaintiff has already received; and as plaintiff's injuries do not rise to the level of grave injury within the meaning of New York Workers' Comp. Law §11; and (b) such other and further relief as the Court may deem just and proper.
Defendant Big E filed Motion Sequence No. 007 by Notice of Motion on October 29, 2024, seeking (a) summary judgment pursuant to CPLR § 3212 as to liability and dismissing all claims and crossclaims against Defendant Big E; and (b) such other and further relief as the Court may deem just and proper. Plaintiff filed opposition on November 21, 2024. Defendant Big E filed reply on November 28, 2024.
Defendant QSR Management (hereinafter referred to as QSR) filed Motion Sequence No. 008 by Notice of Motion on November 27, 2024, seeking (a) summary judgment pursuant to [*4]CPLR § 3212 and dismissal of Plaintiff's Complaint, and all crossclaims asserted against QSR as no questions of fact exists to provide Plaintiff any basis for relief as against Defendant QSR; and (b) such other and further relief as the Court may deem just and proper. Plaintiff filed opposition on January 9, 2025. Reply was waived.
Defendant Big E, filed Motion Sequence No. 007 on October 29, 2024, seeking (a) summary judgment pursuant to CPLR § 3212 as to liability and dismissing all claims and crossclaims asserted against Defendant Big E; and (b) such other and further relief as the Court may deem just and proper. Plaintiff filed opposition on November 21, 2024. Defendant Big E filed reply on November 28, 2024.
Defendant QSR filed Motion Sequence No. 008 by Notice of Motion on November 27, 2024, seeking (a) summary judgment pursuant to CPLR § 3212 and dismissing Plaintiff's Complaint, and all crossclaims asserted against Defendant QSR, as no questions of fact exists to provide Plaintiff any basis for relief as against Defendant QSR; and (b) such other and further relief as the Court may deem just and proper. Plaintiff filed opposition on January 9, 2025. Reply was waived.
Defendants Dunkin filed Cross Motion Sequence No. 009 by Notice of Motion on November 27, 2024, seeking (a) summary judgment pursuant to CPLR § 3212 and dismissing Plaintiff's Complaint and all crossclaims filed against Defendant Dunkin; (b) summary judgment on Defendant Dunkin's crossclaims for contractual and common law indemnification against Defendant West Service; and (c) such other and further relief as the Court may deem just and proper. West Service filed partial opposition on January 6, 2025. Defendant Dunkin filed reply on January 14, 2025.
Defendant Big E filed Motion Sequence No. 010 by Notice of Motion on December 6, 2024, seeking (a) pursuant to CPLR § 3042 [b] and CPLR § 3043 [b] to strike and preclude Plaintiff's supplemental bill of particulars, dated November 14, 2024; and (b) such other and further relief as the Court may deem just and proper. Plaintiff filed opposition on January 15, 2025. Defendant Big E filed reply on February 4, 2025.
Defendant West Service filed Cross Motion Sequence No. 011 by Notice of Motion on January 21, 2025, seeking (a) pursuant to CPLR § 3042 [b] and CPLR § 3043 [b] to strike and preclude Plaintiff's Supplemental Bill of Particulars, dated November 14, 2024 and (b) such other and further relief as the Court may deem just and proper. Plaintiff filed opposition post oral argument without objection on the same day as oral argument, February 20, 2025. Reply was waived.
II. Facts
On January 29, 2020, Plaintiff was working at the Dunkin' Donuts located on West Service Road Expressway in Staten Island. (NY St Cts Filing [NYSCEF] Doc No. 301 at page 14, line 23 to page 15, line 7). Plaintiff was employed as a sandwich cashier but could be called upon to fill-in in other positions. (see id at page 16, lines 3-4; 19-25). The location where the Plaintiff worked had a lower level where cups and other items would be stored. (see id at page 22, lines 18-19). Plaintiff testified,
There was a cooler we would have eggs and sausages in there, and other different items to store them, and we would organize things on the tray, and keep them in the cooler, and we would bring bagels and other things from the basement and they would all there be there stored. There was ice there. We would also change our clothes there. (see id at page [*5]22, line 20 to page 23, line 4).
Plaintiff further testified regarding access to the basement.
Q Okay, and how would one get from the first  the street level of the Dunkin' Donuts to the basement level of the store?
A There is a door in the front of the store. There is also a back door in that store, and when I enter by the back door there is a staircase that goes down to the basement.
Q Does the front door entrance also lead to the stairs to the basement?
A Yes, if you enter from the front door in the store on the side there is a another door. You can go through the side door and go around to the basement.
Q You previously indicated that there's a front door entrance and there is a back door entrance. Is there also a side door entrance?
A So just to explain when you enter this store from the front door it's actually a grocery store. So there is a grocery store and half of this are grocery store is taken by the Dunkin' Donuts store, and once you enter there is a grocery store, and then you go the Dunkin' Donuts which is half of the store, and on the side of this there are two bathrooms used by the grocery store staff and the Dunkin' Donuts staff, and around the area where the bathroom is there is another door that goes down to the basement. (see id at page 23, line 10 to page 24, line 15).
On January 29, 2020, Plaintiff was working the 2:00 PM to 9:00 PM shift. (see id at page 33, lines 10-11). Plaintiff testified that her normal practice upon arriving for work was to
enter the store, and go down to the basement. Everybody does the same thing. I go to the basement. I put my bag down, and take my apron from it. I wear my cap, and then I come back up to the store, and then I wash my hands with soap, and I wipe my hands with napkin, and I start my work. (see id at page 35, lines 15-22).
Plaintiff testified that on January 29, 2020, she arrived at the location of the incident approximately 3 to 4 minutes before 2:00 PM and was going down to the basement to prepare for her shift, when she fell. (see id at page 36, lines 2-3; page 37; lines 3-8). Plaintiff testified that "I descended the first set of stairs, the four or five stairs and I reached the square landing area. After I cross the landing area and started to descend the next set of stairs, I went down two steps, I went down two steps. On the third step I fell with a thud." (see id at page 41, lines 11-17). Plaintiff contends that there was nothing on the steps. (see id at page 42, lines 4-5).
Plaintiff further testified, "when I put the step down my whole body fell in front when the step broke, and I got stuck in between." (see id at page 44, line 24 to page 45 line 3). Plaintiff contends that when she stepped on the third step, "it broke and it caved in." (see id at page 45, lines 7-10).
Jay Dreicer, Director of Operations for QSR, testified that on the date of the incident QSR managed the property located at 180 West Service Road in Richmond Staten Island, the location where the Plaintiff's accident occurred. (NY St Cts Filing [NYSCEF] Doc No. 304 at page 10, line 25 to page 11, line 4). Dreicer further testified that on the date of the incident QSR was a management company and West Service was an LLC franchise. (see id at page 15, lines 10-20). On the date of the incident, QSR had at least one employee working at the site overseeing the LLC. (see id at page 16). QSR's employee was responsible for managing the [*6]operations from, again, speed of service, food quality, guest relations. (see id at lines 19-21).
Dreicer further testified,
Q For the 180 West Service Road location, who does the daily maintenance like the cleaning, the inspection and things of that nature?
A The team members that work for that LLC do the cleaning, things of that nature.
Q Okay. The team members, who are they hired by?
A Generally, the manager hires the team members.
Q The manager of QSR or the manager of West Service?
A The manager of West Service.
Q All right. And who hires the manager of West Service?
A Generally, it would be the area manager or the operation team for QSR Management. (see id at page 17, line 12 to page 13, line 4).
Dunkin entered into a franchise agreement with Defendant West Service, which permitted West Service to make use of the Dunkin trademark at the 180 West Service Road location. (NY St Cts Filing [NYSCEF] Doc No. 258; 259). Peter Nappi, employed by Dunkin's parent company, oversees the Dunkin and Baskin-Robins brands. (NY St Cts Filing [NYSCEF] Doc No. 257 at page 13-14). Nappi testified that "QSR is a parent company that owns - - that owned multiple different Dunkin's throughout Staten Island and New Jersey. So that is - - that is the parent company that owned and operated the Dunkin' Donuts on 180 West Service Road." (see id at page 49, lines 12-17).
The General Terms and Conditions of the Franchise Agreement provides in section 5.1.6:
FRANCHISEE shall maintain, at all times and at FRANCHISEE's expense, the interior and exterior of the Unit and all fixtures, furnishings, signs and equipment in the highest degree of cleanliness, orderliness, sanitation and repair, as reasonably required by FRANCHISOR. FRANCHISEE shall make no material alteration, addition, replacement or improvement in or to the interior or exterior of the Unit (including the parking lot and landscaped areas) without FRANCHISOR's prior written consent. (NY St Cts Filing [NYSCEF] Doc No. 258).
The agreement further provides in section 5.4:
Indemnification. FRANCHISEE shall save, defend, exonerate, indemnify and hold harmless FRANCHISOR, and each of them, and the subsidiaries or each of them, and their respective officers, directors, employees, agents, successors and assigns, from and against (i) any and all claims based upon, arising out of, or in any way related to the operation or condition of any part of the Unit or the Premises, the conduct of business thereupon, the ownership or possession of real or personal property and any negligent act, misfeasance or nonfeasance by FRANCHISEE or any of its agents, contractors, servants, employees, or licensees, and including, without limitation, all obligations of FRANCHISEE incurred pursuant to any provisions of this Agreement, and (ii) any and all fees (including reasonable attorneys' fees), costs and other expenses incurred by or on behalf of FRANCHISOR in the investigation of or defense against any and all such claims. (see id).
III. Motion Sequence No. 005: Strike Defendant Big E's Answer
On June 15, 2022, Plaintiff filed a motion for Default Judgment against Defendants Robert Formica, Richard Formica, and Defendant Big E. (NY St Cts Filing [NYSCEF] Doc No. 17). On July 21, 2022, a Preliminary Conference was held. (NY St Cts Filing [NYSCEF] Doc No. 25). On August 17, 2022, the Court ordered that the Plaintiff's motion for Default Judgment against Defendants Robert Formica, Richard Formica, and Defendant Big E was granted. (NY St Cts Filing [NYSCEF] Doc No. 25). On January 12, 2023, the Court granted Plaintiff's motion to amend the Summons and Complaint to add QSR as Defendant with a further direction to serve the amended summons and complaint on the new party. (NY St Cts Filing [NYSCEF] Doc No. 59).
On January 20, 2023, Defendant Big E, served their answers to Plaintiff's amended complaint. (NY St Cts Filing [NYSCEF] Doc No. 61). On March 21, 2023, the court vacated the default Judgment against Defendant Big E and Big E agreed to waive all jurisdictional defenses. (NY St Cts Filing [NYSCEF] Doc No. 65). On February 12, 2024, a stipulation to amend the caption was filed. (NY St Cts Filing [NYSCEF] Doc No. 88). On February 12, 2024, Plaintiff filed an amended summons and complaint. (NY St Cts Filing [NYSCEF] Doc No. 89). Defendant Big E filed their answer to the amended complaint. (NY St Cts Filing [NYSCEF] Doc No. 95). On June 11, 2024, the Court Ordered, the deposition of Defendant Big E scheduled for July 31, 2024. (NY St Cts Filing [NYSCEF] Doc No. 134).
CPLR § 3124 provides "If a person fails to respond to or comply with any request, notice, interrogatory, demand, question or order under this article, except a notice to admit under section 3123, the party seeking disclosure may move to compel compliance or a response."
"CPLR § 3101 [a] provides that '[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action.' ''The words, material and necessary, are . . . to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial'" (see Ayres v. Bloomberg, L.P., 2025 NYAppDiv LEXIS 834 [2d Dept 2025] quoting McAlwee v Westchester Health Assoc., PLLC, 163 AD3d 547 [2d Dept 2018] quoting Allen v Crowell-Collier Publishing Co., 21 NY2d 403 [1968]).
"The supervision of discovery, and the setting of reasonable terms and conditions for disclosure, are matters within the sound discretion of the trial court" (see Espinoza v. Tejeda, 228 AD3d 623 [2d Dept 2024] quoting Pulgarin v Richmond, 219 AD3d 1356 [2d Dept 2023]; citing Wadolowski v Cohen, 99 AD3d 793 [2d Dept 2012]).
"Although public policy strongly favors that actions be resolved on the merits when possible, a court may resort to the drastic remedies of striking a pleading or precluding evidence upon a clear showing that a party's failure to comply with a disclosure order was the result of willful and contumacious conduct" (see Ferjuste v 437 BMW, LLC, 219 AD3d 1308 [2d Dept 2023] quoting Nationstar Mtge., LLC v Jackson, 192 AD3d 813 [2d Dept 2021]).
"'The willful or contumacious character of a party's conduct can be inferred from the party's repeated failure to respond to demands or to comply with discovery orders, and the absence of a reasonable excuse for these failures,' or by the failure to comply with court-ordered discovery over an extended period of time" (see id, quoting Turiano v Schwaber, 180 AD3d 950 [2d Dept 2020]; citing HSBC Bank USA, N.A. v Branker, 177 AD3d 954 [2d Dept 2019]).
"Pursuant to CPLR § 3126, a court may impose discovery sanctions, including the striking of a pleading or preclusion of evidence, where a party 'refuses to obey an order for disclosure or willfully fails to disclose information which the court finds ought to have been [*7]disclosed'" (see Nationstar Mtge., LLC v Jackson, 192 AD3d 813 [2d Dept 2021] quoting Aha Sales, Inc. v Creative Bath Prods., Inc., 110 AD3d 1019 [2d Dept 2013] quoting CPLR § 3126).
"The nature and degree of the penalty to be imposed pursuant to CPLR 3126 is a matter within the discretion of the court" (see id citing Smookler v Dicerbo, 166 AD3d 838 [2d Dept 2018]). The Second Department has held that the willful and contumacious character of the defendant's conduct can be inferred from its failure to comply with court orders directing it to produce a witness for a deposition. (see Reyes v U.S. Sec. Assoc. Aviation Servs., Inc., 230 AD3d 708 [2d Dept 2024]).
In this matter, Defendant Big E's deposition was scheduled for July 31, 2024, however, Big E failed to appear for the deposition. On August 23, 2024, Defendant Big E's Counsel responded to an email from Plaintiff's counsel contending that Big E had no knowledge of the accident and refused to participate in the litigation. (NY St Cts Filing [NYSCEF] Doc No. 165). Despite Plaintiff's willingness to conduct the deposition of Defendant Big E, Defendant refused to appear for their deposition (see id) and Big E's deposition is outstanding and unscheduled.
Counsel for West Service contended on the record,
To the best of our abilities, by the time that we were impleaded into this action, the franchise, this is a Dunkin' franchise at West Service Road, no longer existed, it was out of business. The franchise had been transferred to another entity. So there was nobody that was available to be produced specifically from that franchise for deposition. (tr 5, lines 12-18 [February 20, 2025]).
Counsel for West Service reiterated when questioned by the Court about witnesses on behalf of West Service, "I don't have anybody." (see id at page 7, line 19). Counsel for West Service further consented to preclusion as to West Service for the purpose of presenting any witnesses at trial. (see id at page 11, lines 2-8).
Accordingly, Plaintiff's Motion Sequence No. 005 request for to strike Defendant Big E Deli N Fuel Corp.'s answer, pursuant to CPLR § 3126, for Defendant Big E Deli N Fuel Corp.'s failure to appear for their deposition is GRANTED.
IV. Motion Sequence No. 006: West Service Summary Judgment Motion
There being no questions of fact to provide Plaintiff another basis for relief as against Defendant West Service Rd., LLC other than through Workers' Compensation benefits, which plaintiff has already received; and as plaintiff's injuries do not rise to the level of grave injury within the meaning of New York Workers' Comp. Law §11, Defendant West Service Rd., LLC's Motion Sequence No. 006, seeking summary judgment and dismissal of Plaintiff's complaint pursuant to CPLR § 3212, is GRANTED on consent. (tr 11, lines 1-13 [February 20, 2025]).
V. Motion Sequence No. 007: Big E Summary Judgment Motion
The Court having already struck Defendant Big E Deli N Fuel Corp.'s answer, pursuant to CPLR § 3126, for failure to appear for their deposition. Accordingly, Defendant Big E's Motion Sequence No. 007 seeking summary judgment pursuant to CPLR § 3212 as to liability and dismissing all claims and crossclaims against Defendant Big E is DENIED as moot.
VI. Motion Sequence No. 008: QSR Summary Judgment Motion
Defendant QSR Management failed to appear on the oral argument date of February 20, 2025. (tr 14, lines 6-14 [February 20, 2025]). Accordingly, QSR Management's Motion Sequence No. 008 seeking summary judgment pursuant to CPLR § 3212 and dismissal of Plaintiff's Complaint, and all crossclaims asserted against Defendant QSR Management, because no questions of fact exist to provide Plaintiff any basis for relief as against Defendant QSR Management is DENIED. (see U.S. Bank Trust, N.A. v Aulder, 219 AD3d 666 [2d Dept 2023]).
VII. Motion Sequence No. 009: Dunkin Summary Judgment and Indemnification
Defendants Dunkin seek summary judgment pursuant to CPLR § 3212 and dismissing Plaintiff's Complaint and all crossclaims filed against Defendant Dunkin and summary judgment on Defendant Dunkin's crossclaims for contractual and common law indemnification against Defendant West Service.
On April 21, 2001, Dunkin entered into a Franchise Agreement with West Service. (NY St Cts Filing [NYSCEF] Doc No. 258). This Franchise Agreement pertained to premises located at 180 West Service Road, Staten Island, New York and was in full force and effect on the date of the incident, January 29, 2020. (see id). Under the Franchise Agreement and Terms & Conditions, West Service Rd., LLC was the "Franchisee" and Dunkin' was the "Franchisor." (see id).
Section 5.1.6 of the Terms and Conditions provides,
FRANCHISEE shall maintain, at all times and at FRANCHISEE's expense, the interior and exterior of the Unit and all fixtures, furnishings, signs and equipment in the highest degree of cleanliness, orderliness, sanitation and repair, as reasonably required by FRANCHISOR. FRANCHISEE shall make no material alteration, addition, replacement or improvement in or to the interior or exterior of the Unit (including the parking lot and landscaped areas) without FRANCHISOR's prior written consent. (NY St Cts Filing [NYSCEF] Doc No. 259 at page 5).
Section 5.4 of the Terms and Conditions provides for indemnification as follows:
FRANCHISEE shall save, defend, exonerate, indemnify and hold harmless FRANCHISOR, and each of them, and the subsidiaries or each of them, and their respective officers, directors, employees, agents, successors and assigns, from and against (i) any and all claims based upon, arising out of, or in any way related to the operation or condition of any part of the Unit or the Premises, the conduct of business thereupon, the ownership or possession of real or personal property and any negligent act, misfeasance or nonfeasance by FRANCHISEE or any of its agents, contractors, servants, employees, or licensees, and including, without limitation, all obligations of FRANCHISEE incurred pursuant to any provisions of this Agreement, and (ii) any and all fees (including reasonable attorneys' fees), costs and other expenses incurred by or on behalf of FRANCHISOR in the investigation of or defense against any and all such claims. (see id at page 8).
Section 5.3 of the Terms and Conditions provides for an insurance requirement as [*8]follows:
FRANCHISEE shall procure, before the commencement of business, and maintain in full force and effect during the entire term of this Agreement, at FRANCHISEE' sole expense, an insurance policy or policies protecting FRANCHISEE and FRANCHISOR, and their directors and employees, against any loss, liability, including without limitation employment practices liability, or expense whatsoever from, without limitation, fire, personal injury, theft, death, property damage or otherwise, arising or occurring upon or in connection with FRANCHISEE's operation of the Unit or by reason of FRANCHISEE's occupancy of the Premises. (see id at page 7).
At the time of the alleged stairway accident by the Plaintiff on January 29, 2020 at the 180 West Service Road, Staten Island, New York location, Plaintiff was an employee of West Service and working at the time of the alleged accident. (NY St Cts Filing [NYSCEF] Doc No. 301).
Peter Nappi, who is employed by Dunkin's parent company, oversees the Dunkin and Baskin-Robins brands, testified
I partner with franchises in the New York Metro market to help them with operating their business from all aspects of the business.
So, just more of like a market partner of operations, marketing, making sure that they're - - they're holding up to their contractual obligations, coaching them and guiding them on things that we see. It's more recommend - - a lot of it's more recommendations. And then it's - - some of it's recommendation, some of it is making sure that they're upholding their — franchise agreement and brand standards. (NY St Cts Filing [NYSCEF] Doc No. 257 at page 13, line 15 to page 14, line 4).
Nappi further testified
[S]o for Dunkin', if someone is a current franchisee, I help advise them in operating their business. (see id at page 14, lines 9-11). I work with them on coming up with a business plan, they submit to us the business plan. They're - - they're, you know, they are required to follow their franchise agreement, and within that franchise agreement, they can ask for support on there - - from the support system of things they can do better. And I help guide them with that as along - - as well as help them stay aligned with what the company brand - - what the company's focuses are, and align them with marketing focuses. (see id page 14, line 19 to page 15, line 6).
Nappi was questioned regarding maintenance issues and hazardous .
Q [W]hen you say you oversee whether the franchisees are in compliance with their contractual obligations, does that mean there is maintenance to be done or control of the [sic] any defective - - any defective material on the location that the Dunkin' franchise? Would that be your responsibility to oversee? (see id at page 16, lines 9-16).
A No, that would not be under my scope of - - so my scope of work is things that are within brand standards that the brand - - from the brand business model. So, maintenance of the building, we would make recommendations. But if it's - - if it's the, you know, if it's something that is out of my scope of work, we would just make a recommendation to help their business, but it wouldn't become a requirement. (see id at page 16, line 22 to [*9]page 17, line 7).
Q But let's say there is a basement where merchandise can be kept and then there's a stair, part of it, that there is a defect[]. Would you make [a] recommendation to take care of it? (see id at page 17, line 20-25).
A So, depending on the scenario, it would - - it would not be a requirement, but I would probably make a recommendation if there was any faulty, you know, if there was anything that would create a hazardous environment. (see id at page 18, lines 4-8).
Q What about hazardous conditions like defective stairs or wet substance on the floor, who does that maintenance? (see id at page 27, lines 12-14).
A That would be 100 percent up to the franchisee or the — or landlord  or  or  or landlord depending on their agreement. (see id at lines 18-21).
Q Based on your knowledge, based on your expertise and operational management back then, the maintenance was done by QSR Management; is that correct?
A The maintenance was  the maintenance of the Dunkin'?
Q The Dunkin' for the basement - -
A The  the Dunkin' is  is the responsibility of QSR Management.
Q So, the basement has defectives or any hazardous condition, that's for QSR to maintain it or fix it?
A I have no knowledge of their individual lease agreement with the landlord or shared space. But for  for the maintenance of the equipment and the space that Dunkin' provided — Dunkin' is responsible for, it would be QSR. (see id at page 38, line 20 to page 39, line 13).
Nappi further testified that in the franchise agreement, the franchise is 100 percent responsible for providing the insurance under their LLC. (see id at page 48, lines 2-4).
Nappi testified regarding employment at franchises.
Q Does Dunkin' hire any employees for these - - their franchises - -
A I'm sorry.
Q - - that work at locations?
A Dunkin' does not have any employees. Dunkin' - - we do not hire any employees. We do not recruit employees. We have no connection with the franchisees employees at all.
Q And so staffing the individual location, would that be something that the franchisee is responsible for?
A Yes, they're solely responsible for that. (see id at page 70, lines 2-14).
A. Summary Judgment
"Summary judgment is designed to expedite all civil cases by eliminating from the Trial Calendar claims which can properly be resolved as a matter of law. Since it deprives the litigant of his day in court it is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues" (see Andre v Pomeroy, 35 NY2d 361 [1974] citing Millerton Agway Cooperative, Inc. v Briarcliff Farms, Inc., 17 NY2d 57 [1966]).
"[W]hen there is no genuine issue to be resolved at trial, the case should be summarily decided, and an unfounded reluctance to employ the remedy will only serve to swell the Trial Calendar and thus deny to other litigants the right to have their claims promptly adjudicated." [*10](see Gibbons v Hantman, 58 AD2d 108 [2d Dept 1977] quoting Andre v Pomeroy, 35 NY2d 361 [1974]).
"In determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party" (see Stukas v Streiter, 83 AD3d 18 [2d Dept 2011] citing Pearson v Dix McBride, 63 AD3d 895 [2d Dept 2009]). "The function of the court on a motion for summary judgment is not to resolve issues of fact or determine matters of credibility, but merely to determine whether such issues exist" (see id quoting Kolivas v Kirchoff, 14 AD3d 493 [2d Dept 2005]).
"[T]he elements of a cause of action sounding in negligence are: (1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of this duty; and (3) an injury to the plaintiff as a result thereof" (see Poon v Nisanov, 162 AD3d 804 [2d Dept 2018] quoting Stukas v Streiter, 83 AD3d 18 [2d Dept 2011]).
"Accordingly, a defendant who moves for summary judgment dismissing a cause of action alleging negligence may sustain his or her initial burden by 'establishing, prima facie, that he or she was not at fault in the happening of the subject accident'" (see id quoting Boulos v. Lerner-Harrington, 124 AD3d 709 [2d Dept 2015] citing Goldstein v Kingston, 153 AD3d 1235 [2d Dept 2017]; Searless v Karczewski, 153 AD3d 957 [2d Dept 2017]; Victor v Daley, 150 AD3d 1307 [2d Dept 2017]; Faust v Gerde, 150 AD3d 1204 [2d Dept 2017]).
"[L]iability for a dangerous condition on property is generally predicated upon ownership, occupancy, control or special use of the property" (see Nappi v Inc. Vill. of Lynbrook, 19 AD3d 565 [2d Dept 2005] quoting Warren v Wilmorite Inc., 211 AD2d 904 [3d Dept 1995]). "The existence of one or more of these elements is sufficient to give rise to a duty to exercise reasonable care" (see id quoting Turrisi v Ponderosa, Inc., 179 AD2d 956 [3d Dept 1992]).
"It is fundamental that, in order to be held liable in tort, the alleged tortfeasor must have owed the injured party a duty of care" (see Karpovich v City of New York, 162 AD3d 996 [2d Dept 2018] quoting Forbes v Aaron, 81 AD3d 876 [2d Dept 2011]; citing Palka v Servicemaster Management Servs. Corp., 83 NY2d 579 [1994]).
"Absent proof of a principal/agency relationship or proof that a franchisor exercised a high degree of control over its franchisee, there is no basis for holding a franchisor responsible for its franchisee's misconduct" (see Smith-Hoy v AMC Prop. Evaluations, Inc., 52 AD3d 809 [2d Dept 2008] citing Friedler v Palyompis, 12 AD3d 637 [2d Dept 2004]; Sperte v Shaffer, 111 AD2d 856 [2d Dept 1985]).
The documentary evidence in the form of the Franchise Agreement between Dunkin and West Service (NY St Cts Filing [NYSCEF] Doc No. 258) and the Franchise Agreement Terms & Conditions (NY St Cts Filing [NYSCEF] Doc No. 259) and the testimony of Peter Nappi (NY St Cts Filing [NYSCEF] Doc No. 257) clearly demonstrate that Defendant Dunkin did not own, occupancy, control or have any special use of the property where the alleged incident occurred and could therefore not have liability for a dangerous condition. (see Nappi v Inc. Vill. of Lynbrook, 19 AD3d 565 [2d Dept 2005]).
Section 5.1.6 of the Terms and Conditions clearly requires the Franchisee, West Service, to maintain the interior and exterior of the Unit and all fixtures, furnishings, signs and equipment in the highest degree of cleanliness, orderliness, sanitation and repair. (NY St Cts Filing [NYSCEF] Doc No. 259 at page 5).
Mr. Nappi's testimony regarding maintenance provided "we would just make a recommendation to help their business, but it wouldn't become a requirement. (NY St Cts Filing [*11][NYSCEF] Doc No. 257 at page 16, line 22 to page 17, line 7). When questioned regarding who would be responsible for hazardous conditions like defective stairs or wet substance on the floor, Mr. Nappi testified, "[t]hat would be 100 percent up to the franchisee or the — or landlord  or  or  or landlord depending on their agreement." (see id at lines 18-21). No proof has been provided of a principal/agency relationship or proof that Dunkin exercised a high degree of control over its West Service.
Accordingly, Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC's Motion Sequence No. 009 request for summary judgment pursuant to CPLR § 3212 and dismissal of Plaintiff's Complaint as to Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC and all crossclaims filed against Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC is GRANTED with prejudice.
B. Indemnification
"[A] contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed" (see Matter of Islip Theaters v. Landmark Plaza Props. Corp., 195 AD3d 828 [2d Dept 2021] quoting Morlee Sales Corp. v Manufacturers Trust Co., 9 NY2d 16 [1961]; citing Wallace v 600 Partners Co., 86 NY2d 543 [1995]; Matter of A. Ligeras Enters., Inc. v Carla Realty Co., 164 AD3d 783 [2d Dept 2018]). "Thus, clear, complete writings should generally be enforced according to their terms" (see id quoting Wallace v 600 Partners Co., 86 NY2d 543 [1995]).
"[A] contract must be read as a whole in order to determine its purpose and intent, and . . . single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part" (see J.W. Mays v Snyder Fulton St., LLC, 69 AD3d 572 [2d Dept 2010] quoting In re Estate of Friedman, 64 AD2d 70 [2d Dept 1978]; citing Aimco Chelsea Land, LLC v Bassey, 6 AD3d 367 [2d Dept 2004]).
"It is well-settled that when interpreting a contract, the court should arrive at a construction which will give fair meaning to all of the language employed by the parties, to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized" (see John E. Andrus Mem'l Home v De Buono, 260 AD2d 635 [2d Dept 1999] citing Joseph v Creek & Pines, 217 AD2d 534 [2d Dept 1995]; Partrick v Guarniere, 204 AD2d 702 [2d Dept 1994]).
"A contract should not be interpreted in such a way as would leave one of its provisions substantially without force or effect" (see id citing Joseph v. Creek & Pines, 217 AD2d 534 [2d Dept 1995]).
The language of the contract between Dunkin (Franchisor) and West Service (Franchisee) is clear and unequivocal in the matter of indemnification.
Section 5.4 of the Terms and Conditions provides for indemnification as follows:
FRANCHISEE shall save, defend, exonerate, indemnify and hold harmless FRANCHISOR, and each of them, and the subsidiaries or each of them, and their respective officers, directors, employees, agents, successors and assigns, from and against (i) any and all claims based upon, arising out of, or in any way related to the operation or condition of any part of the Unit or the Premises, the conduct of business thereupon, the ownership or possession of real or personal property and any negligent act, misfeasance or nonfeasance by FRANCHISEE or any of its agents, contractors, [*12]servants, employees, or licensees, and including, without limitation, all obligations of FRANCHISEE incurred pursuant to any provisions of this Agreement, and (ii) any and all fees (including reasonable attorneys' fees), costs and other expenses incurred by or on behalf of FRANCHISOR in the investigation of or defense against any and all such claims. (NY St Cts Filing [NYSCEF] Doc No. 259 at page 8).
Section 5.3 of the Terms and Conditions provides for an insurance requirement as follows:
FRANCHISEE shall procure, before the commencement of business, and maintain in full force and effect during the entire term of this Agreement, at FRANCHISEE' sole expense, an insurance policy or policies protecting FRANCHISEE and FRANCHISOR, and their directors and employees, against any loss, liability, including without limitation employment practices liability, or expense whatsoever from, without limitation, fire, personal injury, theft, death, property damage or otherwise, arising or occurring upon or in connection with FRANCHISEE's operation of the Unit or by reason of FRANCHISEE's occupancy of the Premises. (see id at page 7).
Dunkin (Franchisor) and West Service (Franchisee) have expressed a clear intent that West Service shall defend and indemnify Dunkin for accidents such as the one in this matter.
Accordingly, Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC's Motion Sequence No. 009 request for summary judgment pursuant to CPLR § 3212 on Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC crossclaims for contractual and common law indemnification against Defendant West Service Rd., LLC, is GRANTED.
VIII. Motion Sequence No. 010: Big E's Motion to Strike and Preclude
Defendant Big E Deli N Fuel Corp.'s Motion Sequence No. 010 request pursuant to CPLR § 3042 [b] and CPLR § 3043 [b] seeking to strike and preclude Plaintiff's supplemental bill of particulars, dated November 14, 2024, is DENIED as moot.
IX. Motion Sequence No. 011: West Service Motion to Strike and Preclude
On or about July 24, 2024, Plaintiff filed a Verified Bill of Particulars. (NY St Cts Filing [NYSCEF] Doc No. 307). On or about September 24, 2024, Plaintiff filed a Note of Issue and Certificate of Readiness for Trail. (NY St Cts Filing [NYSCEF] Doc No. 306). On November 14, 2024, Plaintiff filed a Supplemental Bill of Particulars. (NY St Cts Filing [NYSCEF] Doc No. 308).
Plaintiff's Bill of Particulars filed on July 24, 2024 identified the following injuries allegedly sustained by the Plaintiff:
left knee sprain/strain
• left ankle sprain/strain
• cervical sprain/strain
• left arm sprain/strain
• lumbar sprain/strain
• depression
• headaches
• anxiety
• fear
• emotional upset and shock (NY St Cts Filing [NYSCEF] Doc No. 307).
Defendant West Service contends that the November 14, 2024, Bill of Particulars enumerated various new injuries, as follows:
Pertaining to the left shoulder:
• partial tear of the distal supraspinatus tendon
• partial tear of the distal subscapularis tendon
Pertaining to the left ankle:
• posterior talar process appears prominent with surrounding fluid suggestive of posterior ankle impingement
Pertaining to the left knee:
• partial ACL tear with fluid intercondylar notch
Pertaining to the cervical spine:
• superimposed central disc herniation at the C5-C6
• posterior bulge at the C3-C4 impinging upon the anterior thecal sac
• posterior bulge at the C4-C5 impinging upon the anterior thecal sac
• posterior bulge at the C5-C6
• posterior bulge at the C6-C7 impinging upon the anterior thecal sac
Pertaining to the lumbar spine:
• disc herniations at L3-L4 impinging upon the anterior thecal sac
• central disc herniation with annular fissure at the L4-L5
• left paracentral disc herniation at the L5-S1 disc level with annular fissure, impinging upon the anterior thecal sac
• Posterior bulge at the L3-L4
• Posterior bulge at the L4-L5
As a result of foregoing injuries Plaintiff was forced to undergo:
• cortisone steroid injections of left shoulder and left ankle
• two cervical epidural steroid injections at C5/6
• lumbar trigger point injection (NY St Cts Filing [NYSCEF] Doc No. 308).
West Service further contends that none of these injuries were previously alleged during the discovery process, wherein the defendants would have had an opportunity to question the Plaintiff about the claimed injuries or to conduct physical evaluations by appropriate medical experts.
CPLR § 3042 [b] provides: "In any action or proceeding in a court in which a note of issue is required to be filed, a party may amend the bill of particulars once as of course prior to [*13]the filing of a note of issue."
"The purpose of a bill of particulars is to amplify the pleadings, limit the proof, and prevent surprise at trial" (see L.R. v Evergreen Charter Sch., 232 AD3d 920 [2d Dept 2024] quoting Jurado v Kalache, 93 AD3d 759 [2d Dept 2012]; citing Jones v LeFrance Leasing Ltd. Partnership, 61 AD3d 824 [2d Dept 2009])
"In a personal injury action, '[a] party may serve a supplemental bill of particulars with respect to claims of continuing special damages and disabilities without leave of court at any time, but not less than thirty days prior to trial. Provided however that no new cause of action may be alleged or new injury claimed'" (see id quoting CPLR § 3043 [b]).
"A bill of particulars 'may be used to amplify the allegations in a complaint [but] . . . may not be used to supply allegations essential to a cause of action that was not pleaded in the complaint'" (see Quinones v. Long Is. Jewish Med. Ctr., 230 AD3d 1257 [2d Dept 2024] quoting Alami v 215 E. 68th St., L.P., 88 AD3d 924 [2d Dept 2011]). "Nor can a bill of particulars 'add or substitute a new theory or cause of action' not asserted in the complaint" (see id quoting Castleton v. Broadway Mall Props., Inc., 41 AD3d 410 [2d Dept 2007]).
In the matter of Naftaliyev v GGP Staten Is. Mall, LLC, 204 AD3d 932 [2d Dept 2022],
[t]he plaintiffs' bill of particulars and a supplemental bill of particulars dated July 11, 2018, alleged, inter alia, injuries to the injured plaintiff's right elbow, right wrist, right knee, and back as a result of the subject accident. After filing a note of issue and certificate of readiness, the plaintiffs served what they denominated a "supplemental bill of particulars" dated May 9, 2019. Therein, the plaintiffs alleged that, as a result of the subject accident, the injured plaintiff sustained injuries to her left lower extremity, left ankle, and left foot. (see id).
The Court held in Naftaliyev v GGP Staten Is. Mall, LLC, that "[c]ontrary to the plaintiffs' contention, the document that they denominated a 'supplemental bill of particulars' dated May 9, 2019, was, in reality, an amended bill of particulars, as they sought to add new injuries" (see id citing CPLR § 3043 [b]; Kirk v Nahon, 160 AD3d 823 [2d Dept 2018]; Jurado v Kalache, 93 AD3d 759 [2d Dept 2012]; Fuentes v. City of New York, 3 AD3d 549 [2d Dept 2004]; Dalrymple v Koka, 295 AD2d 469 [2d Dept 2002]).
The Second Department further held that the "the Supreme Court erred in denying that branch of GGP's motion which was to strike the amended bill of particulars dated May 9, 2019, denominated as a supplemental bill of particulars, which was served without leave of court and after the note of issue had been filed" (see id citing Salgado v Town Sports Intl., 73 AD3d 898 [2d Dept 2010]; Elkrichi v Flushing Hosp. Med. Ctr., Inc., 293 AD2d 706 [2d Dept 2002]; Ahamed v 94-11 59th Ave. Corp., 266 AD2d 486 [2d Dept 1999]).
This matter is distinct from Naftaliyev in that the bill of particulars, dated July 11, 2018, in Naftaliyev, Plaintiff alleged injuries to the right elbow, right wrist, right knee, and back and in the post Note of Issue "supplemental" and subsequently deemed "amended" bill of particulars, dated May 9, 2019, Plaintiff alleged completely new injuries to her left lower extremity, left ankle, and left foot. (see id). In this matter, Plaintiff is not alleging a new injury in the supplemental bill of particulars, but merely seeks to amplify with specificity the injuries previously identified.
This matter is more akin to the Fourth Department case of Jeannette S. v Williot, 179 AD3d 1479 [4th Dept 2020], which held "[a] supplemental bill of particulars is appropriate [*14]"[w]here the plaintiff[ ] seek[s] to allege continuing consequences of the injuries suffered and described in previous bills of particulars, rather than new and unrelated injuries" (see Jeannette S. v Williot, 179 AD3d 1479 [4th Dept 2020]; quoting Sisemore v Leffler, 125 AD3d 1374 [4th Dept 2015]; citing Kellerson v Asis, 81 AD3d 1437 [4th Dept 2011]).
Plaintiff's supplemental bill of particulars was filed on November 14, 2024. Defendant West Services Motion Sequence No. 011 was filed on January 14, 2025, more than two months later. Leave to amend a bill of particulars is ordinarily to be freely given in the absence of prejudice or surprise. (see Kirk v Nahon, 160 AD3d 823 [2d Dept 2018]).
"Where, as here, the plaintiff seeks to allege continuing consequences of the injuries suffered and described in previous bills of particulars, rather than new and unrelated injuries, the contested bill of particulars is a supplemental bill of particulars" (see Witherspoon v Surat Realty Corp., 82 AD3d 1087 [2d Dept 2011]; citing Tate v Colabello, 58 NY2d 84 [1983]; Maraviglia v Lokshina, 68 AD3d 1066 [2d Dept 2009]; Shahid v New York City Health & Hosps. Corp., 47 AD3d 798 [2008]; Zenteno v Geils, 17 AD3d 457 [2d Dept 2005]).
Furthermore, the supplemental bill of particulars was served more than 30 days prior to the date of trial, and there is no showing of prejudice to the defendants. (see Maraviglia v Lokshina, 68 AD3d 1066 [2d Dept 2009]). Accordingly, Defendant West Service Road LLC's request pursuant to CPLR § 3042 [b] and CPLR § 3043 [b] to strike and preclude Plaintiff's Supplemental Bill of Particulars, dated November 14, 2024, is DENIED with prejudice.
VI. Decretal Paragraphs
It is hereby ORDERED that Plaintiff's Motion Sequence No. 005 request for to strike Defendant Big E Deli N Fuel Corp.'s answer, pursuant to CPLR § 3126, for Defendant Big E Deli N Fuel Corp.'s failure to appear for their deposition is GRANTED, with prejudice; and it is further,
ORDERED, that Defendant West Service's Motion Sequence No. 006 request for summary judgment and dismissal of Plaintiff's complaint pursuant to CPLR § 3212, as to Defendant West Service Rd., LLC is GRANTED on consent; and it is further,
ORDERED, that Defendant Big E's Motion Sequence No. 007 seeking summary judgment pursuant to CPLR § 3212 as to liability and dismissing all claims and crossclaims against Defendant Big E is DENIED as moot.; and it is further,
ORDERED, that QSR Management's Motion Sequence No. 008 seeking summary judgment pursuant to CPLR § 3212 and dismissal of Plaintiff's Complaint, and all crossclaims asserted against Defendant QSR Management, because no questions of fact exist to provide Plaintiff any basis for relief as against Defendant QSR Management is DENIED; and it is further,
ORDERED, that Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC's Motion Sequence No. 009 request for summary judgment pursuant to CPLR § 3212 and dismissal of Plaintiff's Complaint as to Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC and all crossclaims filed against Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC is GRANTED with prejudice; and it is further,
ORDERED, that Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC's Motion Sequence No. 009 request for summary judgment pursuant to CPLR § 3212 on Defendants Dunkin' Brands, Inc., and Dunkin' Donuts Franchising LLC crossclaims for contractual and common law indemnification against Defendant West Service Rd., LLC, is [*15]GRANTED; and it is further,
ORDERED, that Defendant Big E Deli N Fuel Corp.'s Motion Sequence No. 010 request pursuant to CPLR § 3042 [b] and CPLR § 3043 [b] seeking to strike and preclude Plaintiff's supplemental bill of particulars, dated November 14, 2024, is DENIED as moot; and it is further,
ORDERED, that Defendant West Service Road LLC's request pursuant to CPLR § 3042 [b] and CPLR § 3043 [b] to strike and preclude Plaintiff's Supplemental Bill of Particulars, dated November 14, 2024, is DENIED with prejudice; and it is further,
ORDERED, that counsel to appear for in-person status conference on next adjourn date, April 29, 2025, at 9:30 AM at the Courthouse located at 26 Central Avenue, Courtroom 330, Staten Island, NY; and it is further,
ORDERED, that the Clerk of the Court shall enter judgment accordingly.
The foregoing shall constitute the Decision and Order of this Court. 
Dated: April 3, 2025
Staten Island, New York
E N T E R,
HON. RONALD CASTORINA, JR.
JUSTICE OF THE SUPREME COURT